1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HALF INTERNATIONAL, INC., | CASE NO. CV F 07-0799 LJO SMS |
| Plaintiff, | **ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| TRACI MURRAY, et. al, | |
| Defendants. | |
| _____/ | |

By notice filed on May 23, 2008, Defendants Traci Murray and Barrett Business Services, Inc. move for summary judgment on the grounds that there is no genuine issue of disputed fact pursuant to Fed.R.Civ.P 56.  Plaintiff Robert Half International, Inc. filed a request to seal its opposition on June 13, 2008 and ultimately filed the opposition on June 17, 2008.   Defendants filed a reply on June 16, 2008, which the Court struck as failing to conform with this Court's Standing Order.  Defendants refiled their reply brief on June 20, 2008.  The Court further requested the parties file supplemental briefing regarding a case which is currently pending before the California Supreme Court.  The parties filed their supplemental briefs on June 18, 2008.  The Court, thereafter, took the motion under submission and vacated the hearing date.  Having considered the moving, opposition, reply paper, and supplemental briefs, as well as the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.    Tracy Murray's Employment with Robert Half**

Plaintiff Robert Half International ("RHI") is a professional staffing service firm, specializing in recruiting and placing temporary and permanent employees with RHI clients.  One of RHI's divisions,

1

1   HomeTeam, specializes in the temporary and permanent placement of administrative and office support

2   professional candidates at RHI clients.

3       Defendant Traci Murray ("Murray") began working for RHI's HomeTeam division in Modesto

4   as a staffing manager in 2002. The evidence submitted by plaintiff indicates that RHI trained Murray

5   to recruit skilled candidates, locate placement opportunities with RHI's Modesto office clients, match

6   the candidates to the clients' specific needs, gather client and candidate contact and preference

7   information in developing and maintaining client and candidate relationships and to use and maintain

8   the computer system to successfully generate business for RHI's Modesto office. (Doc. 115, Statement

9   of Disputed Fact, #3.) Later, Murray was promoted to senior staffing member.

10      Murray resigned her position with RHI in February 2007. Murray began work with defendant

11  Barrett Business Services, Inc. ("BBSI") on March 5, 2007 as the Director of Business Development

12  responsible for the exclusive task of soliciting new clients for BBSI.  (Doc. 114, Opposition to Def's

13  Stmt of Undisputed Fact, #13.) Barrett supplies temporary staffing services and professional employer

14  organization ("PEO") services including payroll administration, human resource management, employee

15  benefits, safety services and workers compensation, among other services. (Doc. 114, Opposition to

16  Def's Stmt of Undisputed Fact, #101.)

17  **B.      Confidentiality And Non-Solicitation Provisions**

18      When Murray joined RHI, she signed an employment agreement with RHI which provided for

19  the non-disclosure or misuse of confidential information and non-solicitation of customers if Murray left

20  RHI. (Doc. 114, Opposition to Def's Stmt of Undisputed Fact, #4.) There is no dispute between the

21  parties that she signed the employment agreement which contained the following terms.

22      "¶8. Disclosure or Misuse of Confidential Information. Employee shall
         not, at any time during Employee's employment by any of the RHI
23       Companies or thereafter, directly or indirectly, disclose, furnish or make
         accessible to any person, firm, corporation, or other entity, or make use
24       of, any confidential information of any of the RHI Companies, including,
         without limitation, information with respect to the name, address, contact
25       persons or requirements of any customer, client, applicant, candidate or
         employee of any of the RHI Companies (whether having to do with
26       temporary, contract or permanent employment) Employee acknowledges
         that such information was developed by the RHI Companies at great time
27       and expense and is safeguarded by the RHI Companies as trade secrets.
         Upon termination of the Employee's employment, Employee shall deliver
28       to Employer all records, manuals, training kits, and other property

2

1    belonging to Employer or used in  connection with the business of
2    Employer and all copies thereof, which may be in Employee's
     possession."

3    The Agreement also provided a non-solicitation provision, among other things, that:

4    "¶10. Non-solicitation of Customers. In consideration and view of (I)
     Employee's position with the RHI Companies, (ii) the valuable
5    consideration furnished to the Employee by Employer and  entering into
     this Agreement, (iii) Employee's access to confidential  information and
6    trade secrets of the RHI Companies, and (iv) the value of such
     confidential information and trade secrets to the RHI Companies, for a
7    period of twelve (12) months after the Termination Date, Employee
     agrees that Employee shall not, directly or indirectly, on behalf of any
8    Competitor, Solicit the trade or patronage of any Customer or perform
     services for any Customer. Such restriction on Soliciting or performing
9    services for Customers shall apply regardless of whether or not any such
     Customer was previously a customer of Employee or whether or not such
10   Customer was previously, or is at the time of Solicitation or the
     performance of services, a customer of any Competitor."

11

12   The parties do not dispute that these two provisions are the applicable provisions of the contract.  (Doc.

13   Doc. 114, Opposition to Def's Statement of Undisputed Facts, #4-8.)

14   **C.    The Customer List and Confidential Information**

15        It is undisputed that when Murray left OfficeTeam, Murray took with her, at a minimum, an

16   alphabetical print-out of the names, telephone numbers, business e-mail addresses and titles of Murray's

17   contacts at various companies from her spreadsheet in Microsoft Outlook.  (Doc. 114, Opposition to

18   Def's Statement of Undisputed Facts, #14.)  RHI contends that Murray also took other confidential

19   information such as clients associated billed hours, billing rates, gross margins and candidates placed

20   at those RHI clients.  (Doc. 114, Opposition to Def's Statement of Undisputed Facts #14.) Murray has

21   testified that she called certain of the persons on this list with whom she had close professional and

22   personal relationships. (Doc. 114, Opposition to Def's Statement of Undisputed Facts, #15.)  RHI

23   dispute that the information was Murray's to use and that she used the confidential information to

24   contact "tons" of her former contacts.  (*Id.*)   Murray presents facts that the purpose of her

25   communication was to inform clients that she was leaving OfficeTeam.  On the other hand, RHI disputes

26   that the communications were merely to announce a job change, but rather she solicited each of the

27   contacts for business.  (Doc. 114, Opposition to Def's Statement of Undisputed Facts, #15-16.)

28        As a result of Murray's conduct, and BBSI's alleged participation and assistance, RHI filed this

3

action on May 31, 2007.  The First Amended Complaint filed on February 15, 2008 alleges the following causes of action:

> (1) Violation of the Lanham Act;
>
> (2) Misappropriation of Trade Secrets;
>
> (3) Unfair Competition;
>
> (4) Breach of Contract;
>
> (5) Breach of Covenant of Good Faith and Fair Dealing;
>
> (6) Tortious Interference with Economic Relations, and
>
> (7) Tortious Interference with Contractual Relations.

The pretrial conference in this matter is set for July 8, 2008 and the trial is set for August 11, 2008.

## ANALYSIS AND DISCUSSION

**A.      Summary Judgment Standard**

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The requirement that an issue be "genuine" relates to the quantum of evidence the Plaintiff  must produce to defeat the defendant's summary judgment motion.  There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248.  "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific

4

facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)*; T.W. Elec. Serv.*, 809 F.2d at 631.  The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).  The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies*, 210 F.3d 1099, 1103 (9th Cir.2000); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**B.     Issues of Fact as to Misappropriation of Trade Secrets, Unfair Competition and Tortious Interference**

Defendants argue they cannot be held liable for misappropriation of trade secrets, unfair competition, or tortious interference with prospective economic relations because Murray's actions in contacting and either doing or attempting to do business with RHI clients allegedly does not rise to the

1 | level of "solicitation."[1]

2 | **1.     Misappropriation of Trade Secrets**

3 | A customer list acquired by lengthy and expensive efforts deserves protection as a trade secret.

4 | *See MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993), *cert. denied*, 510 U.S.

5 | 1033, 114 S.Ct. 671 (1993) (customer database qualifies as a trade secret because it has potential

6 | economic value to allow a competitor to direct its sales efforts to potential customers); *Courtesy*

7 | *Temporary Service, Inc. v. Camacho*, 222 Cal.App.3d 1278, 1288, 272 Cal.Rptr. 352 (1990) (trial

8 | court's refusal to grant injunctive relief as to customer information was abuse of discretion).

9 | California has enacted the Uniform Trade Secrets Act ("UTSA"), and California Civil Code

10 | section 3426.1. UTSA defines a trade secret as "information, including a formula, pattern, compilation,

11 | program, device, method, technique, or process, that:

12 | "(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain
13 | economic value from its disclosure or use; and

14 | "(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

15 |

16 | Civ.C. § 3426.1(d). A list containing specialized information on each customer that is not readily

17 | accessible to competitors and that may be decisive in gaining their patronage (e.g., their buying habits,

18 | preference for certain products, name of decisionmaker, etc.) is more likely to be protected as a trade

19 | secret. *See Aetna Bldg. Maint. Co. v. West*, 39 Cal.2d 198, 205, 246 P2d 11, 16 (1952) (pre-UTSA

20 | case); *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1333–1334  (9th Cir.

21 | 1980) (applying Calif. law) (pre-UTSA case); *see Whyte v. Schlage Lock Co.,* 101 Cal.App.4th 1443,

22 | 1452, 125 Cal.Rptr.2d 277, 285 (2002).

23 | Under the UTSA and prior common law, customer lists may be trade secrets, depending upon

24 | the nature of the business and characteristics of the customer base.  California courts have protected

25 |

26 | [1] The Court notes that defendants submitted 150 purported "undisputed facts" in this case, which span every issue
27 | in the case. (See Doc. 113.) Of these 150 facts, only approximately 50 facts are admitted as undisputed by plaintiff.  Thus, 100 facts are disputed.  In turn, plaintiff submitted an additional 110 facts of purportedly disputed facts.  For these disputed
28 | facts submitted by plaintiff, defendants failed to respond to the 110 disputed facts.  Thus, all 110 disputed facts are deemed disputed.

customer lists:

> Trade and business secrets and confidential information are the property of the employer and cannot be used by the employee for his own benefit. A list of subscribers of a service, built up by ingenuity, time, labor and expense of the owner over a period of many years is property of the employer, a part of the good will of his business and, in some instances, his entire business. Knowledge of such a list, acquired by an employee by reason of his employment, may not be used by the employee as his own property or to his employer's prejudice.

*Greenly v. Cooper,* 77 Cal.App.3d 382, 392, 143 Cal.Rptr. 514 (1978)); *see American Credit Indemnity Co. v. Sacks*, 213 Cal.App.3d 622, 631, 262 Cal.Rptr. 92 (1989) (trial court erred in denying injunction in that plaintiff's "customer list was 'information' which has potential economic value because it allows a competitor to direct sales efforts to the elite 6.5 percent of those potential customers"); *see also MAI Systems*, 991 F.2d at 521 (customer database qualifies as a trade secret because it has potential economic value to allow a competitor to direct its sales efforts to potential customers).  In *Thompson v. Impaxx, Inc.*, 113 Cal.App.4th 1425, 1432, n.3, 7 Cal.Rptr.3d 427 (2003), the California Court of Appeal explained:

> For instance, *Morlife* observed that "courts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories. [Citations.] On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. . . . As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret. [Citation.]" (*Morlife*, supra, 56 Cal.App.4th at pp. 1521-1522, 66 Cal.Rptr.2d 731.) Those are the kinds of facts which are relevant to the question.

There is not any real dispute but that the customer list maintained by RHI is confidential trade secret information.  The parties dispute each other's description of the materials Murray took, but not the confidential nature.  Murray acknowledges that she took an alphabetical list of names, telephone numbers, business email address and titles of contacts at various companies she serviced while at RHI, which she printed out of the computer system.  (Doc. 114, Opposition to Def's Undisputed Facts, #14.) The information on clients is maintained and stored on a computer database called "Micro J."  (Doc. 115, Pl's Statement of Disputed Facts # 20.)  Murray testified that she knew the information in Micro J was confidential and valuable information.  (Murray depo. p. 247-248.).  The evidence is undisputed that the Micro J data base contains a compilation of information on RBI clients such as (1) the names,

7

addresses, telephone numbers, and fax numbers of each client; (2) names, titles and telephone numbers of contact persons for each client; (3) detailed records of communications with each client; (4) the history of all job orders for each client including financial information related to the client, the employee s start date, title, name of the person placing the order, RBI's contact, pay and bill rate, accumulated hours, job order status, employee name, and duration of assignment; (5) total billed hours for each client; (6) accounts receivable balance and aging; and (7) other information relevant to servicing each client. (Doc. 115, Plaintiff's Statement of Disputed Facts, #21.) The information contained in the Micro J is the type of information that is regarded as subject to confidentiality. Thus, the information in the Micro J, which Murray admittedly printed, in some portion, is confidential information which qualifies as trade secrets.[2]

In addition, the evidence establishes that RHI took steps to protect the customer list as confidential information. RHI protected its trade secrets through passwords which were necessary to access the Micro J computer system, among other evidence of steps to protect the information. In addition, employees, including Murray, were required to sign confidentiality agreements, among other measures. This evidence is undisputed.

Murray makes the following arguments as to why the confidential information is not subject to violation: (1) Murray merely used the information to announce to customers her a change of employment, and did not solicit business, (2) some of the clients were already clients of BBSI, (3) the clients initiated contact with Murray, not the other way around, and (4) she solicited clients only for non-competing business.

**1.     Personal Relationship and Announcement of Change of Employment**

Murray argues that she merely announced her change of employment to the customers she formerly serviced. She argues that the clients then asked her to continue assisting them in their staffing

---

[2] If the information which was printed is not qualified as a trade secret, this disputed issue alone is sufficient to deny the motion for the claims of misappropriation of trade secrets, unfair competition, and tortious interference. RHI has presented evidence from which a reasonable trier of fact could conclude that the information is trade secrets in that "(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Civ.C. § 3426.1(d). The Court construes Murray's argument as acknowledgment, for purposes of this motion, that the information she took was trade secrets. Whether information is a trade secret is ordinarily a question of fact. *San Jose Const., Inc. v. S.B.C.C., Inc.*, 155 Cal.App.4th 1528, 1357, 67 Cal.Rptr.3d 54 (2007).

needs.

California recognizes that the right to announce a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition. *American Credit Indemnity Co. v. Sacks*, 213 Cal.App.3d at 636. However, customer contact, including an announcement of a new business or affiliation, constitutes solicitation when it "personally petitions, importunes and entreats ... customers to call ... for information about the better (products or services the departing employee) can provide and for assistance during the ... transition period." *American Credit Indem. Co. v. Sacks*, 213 Cal.App.3d at 636.

Trade secrets include customers with whom a former employee had a personal relationship. Providing personal service to a customer whose identity is the employer's trade secret does not thereafter render that customer "fair game for solicitation." *American Credit Indem. Co. v. Sacks*, 213 Cal.App.3d at 636; *Morlife, Inc. v. Perry*, 56 Cal.App.4th 1514, 1525–1526, 66 CR2d 731, 738 (1997). A former employee may use general knowledge, skill and experience acquired in his or her former employment in competition with a former employer; i.e., the former employee cannot be expected to "wipe his or her memory clean." *Moss, Adams & Co. v. Shilling,* 179 Cal.App.3d 124, 129, 224 CR 456, 458 (1986). But, "the former employee may not use confidential information or trade secrets in doing so." *Morlife, Inc. v. Perry*, 56 Cal.App.4th at 1519. In *Morlife*, a roofing company produced evidence that it created the customer list, which included names, addresses, contact persons, pricing information, and information about the customers' needs, through "telemarketing, sales visits, mailings, advertising, membership in trade associations, referrals and research." The roofing company limited employees' access to the customer list and informed employees through an employment agreement and an employee handbook that it considered the information confidential. *Id.* at 1522-23. The employees admittedly took the customer list and directly solicited the customers through telephone calls and personal visits. The Court rejected the employees' argument that their personal relationship with the customers justified their solicitation of business. *Id.* at 1526.

There are questions of fact as to whether Murray violated the UTSA by using the trade secret client data in an improper manner "to directly solicit clients" and for defendants' "own pecuniary gain to the detriment and damage of" plaintiffs. In *American Credit Indem. Co. v. Sacks*, 213 Cal.App.3d at

636, an employee's announcement went beyond a mere change of employment announcement when she informed customers about "interesting competitive alternative," "invite[d] inquiry" and "personally petitions, importunes and entreats ACI's customers to call her at any time for information."

Here, RHI presents evidence that defendant Murray used the confidential customer list to contact persons on the list.  Plaintiff presents evidence that the contact of the confidential customer, took two forms.  First, Murray provided her new contact information, and second, solicited each of the RHI customers she contacted. Murray testified that she contacted "tons" of her former clients - of at least 25-30.  She telephoned, dropped in and wrote customers of RHI.  For instance, she wrote to one customer and stated, "Here is my new contact information for your staffing file.  Please let me know how I can earn your business as a preferred provider."  (Murray Depo, p. 72.)  She emailed another RHI client stating she "would appreciate the opportunity to assist them." (Rush Decl. at ¶3 (under seal).)  Murray delivered marketing material to another RHI client.  (See generally Doc. 115, Statement of Disputed Facts, facts 65 to 71, 73 to 78.)  Plaintiff presents evidence that of the 25-30 former RHI clients Murray contacted, approximately 12-15 clients engaged in or switched services to BBSI and argues that possibly as many as 20 clients used Murray's services. (Doc. 115, Statement of Disputed Facts, # 81-82.)  RHI presents evidence from which a reasonable jury could conclude that defendant did more than merely announce a change of employment.  Thus, there is evidence which raises issues of fact of whether Murray engaged in more than mere announcement of the change of employment.

Murray argues that RHI has not shown that she improperly solicited all of the clients and summary judgment should be granted at least to those for whom no direct evidence was submitted.  For purposes of summary judgment motion, proof of solicitations on a customer-by-customer basis is not required.  In *Morlife*, 56 Cal.App.4th at 1527, a former employee argued that solicitation could only be established by direct evidence on a customer-by-customer basis, and the former employer failed to present evidence that direct solicitations occurred as to all affected Morlife customers.  The court disagreed:  "It was reasonable for the court to infer from the testimony of some of Morlife's former customers and from the other evidence before the court that [former employees] engaged in a general pattern of solicitation."  Thus, at summary judgment, proof on a customer-by-customer basis is not required.

1    Murray further argues that records of client names, addresses and account information are not

2    trade secrets since Murray developed and facilitated such relationships personally and established a

3    business rapport sufficient to solicit clients after Murray's resignation.  Murray notes that "in the absence

4    of a protectable trade secret, the right to compete fairly outweighs the employer's right to protect clients

5    against competition from former employees." *American Credit Indemnity*, 213 Cal.App.3d at 634, 262

6    Cal.Rptr. 92.

7    Trade and business secrets and confidential information are the property of the employer and

8    cannot be used by the employee for her own benefit. A list of subscribers of a service, built up by

9    ingenuity, time, labor and expense of the owner over a period of many years is property of the employer,

10   a part of the good will of his business and, in some instances, his entire business. Knowledge of such

11   a list, acquired by an employee by reason of his employment, may not be used by the employee as his

12   own property or to his employer's prejudice. *Morlife, Inc. v. Perry*, 56 Cal.App.4th at 1526.

13   Here, plaintiff has presented sufficient evidence of systematic contacts, going beyond mere a

14   announcement of employment change.  Based on the totality of the evidence, and at this summary

15   judgment stage, plaintiff has raised carried its burden to raise issues of fact.

16                **2.        Some of the Clients were Already a Client of BBSI**

17   Murray also argues that some clients were already BBSI's clients.  Murray argues that where the

18   disputed client is a settled client of BBSI, she cannot be found to have improperly used any trade secrets

19   to induce that client to give their business to the new employer.  On the other hand, RHI argues that even

20   if some of the clients were BBSI existing clients, that does not negate the fact that Murray solicited them

21   using the customer list to make personal contact, contacting by email and leaving her business card.

22   The parties agree that at least one RHI customer solicited was also an existing client of BBSI.

23   RHI, however, presents evidence that Murray solicited this particular client [*name is sealed*] by

24   approaching her former RHI contact for that client, in person and by email, and leaving her business

25   card.  In other words, she did not use the person who was the BBSI contact to solicit business.  The

26   evidence shows that Murray did not solicit the RHI client through the BBSI contact, but rather she

27   solicited the client through the RHI contact she knew from her employment at RHI.  (Doc. 115,

28   Statement of Disputed Facts #108; Mood Decl. ¶2.)  Thus, this evidence presents disputed issues of fact

1  as to whether Murray's contact with the client was through confidential information and whether she

2  solicited the client.  Therefore, plaintiff has raised issues of fact.

3       **3.    Clients initiated contact with Murray**

4       Murray argues that certain RHI clients initiated contact with her and therefore she did not solicit

5  the business.  Murray argues clients initiated the calls to Murray after they found out from OfficeTeam

6  that she was no longer employed and requested she continue servicing their accounts. Many of the clients

7  expressed a desire to follow Murray and requested information regarding the services offered by BBSI.

8       Where an employee merely accepts unsolicited overtures from his or her former employer's

9  customers, there is no misappropriation. *Aetna Bldg. Maint. Co.*, 39 Cal.2d at 206.

10       RHI, however, presents testimony that the particular RHI client [*name under seal*] was under the

11  erroneous belief that Murray was still employed at RHI.  Through the erroneous contact, Murray used

12  this time to inform the RHI client about her new employer and then solicited business.  RHI presents

13  evidence that while the RHI client may have initiated the contact with Murray, the contact was based

14  on an erroneous belief that Murray was still employed with RHI.  The intent of the client was to place

15  request service from RHI.  Murray redirected the service request to BBSI.  (Doc. 115, Statement of

16  Disputed Facts, #63.)  The client representative submitted a declaration wherein she states that she

17  contacted Murray believing she was calling RHI, but now does business through BBSI. (Doc. 118, Decl.

18  Under Seal ¶¶5-6.)

19       **4.    Solicitation of clients for non-competing business**

20       Murray testified that she solicited a number of clients for light industrial and PEO services.

21  Murray argues that RHI does not fill light industrial orders nor does it offer PEO services.

22       RHI, however, presents evidence from which a reasonable trier of fact could conclude Murray

23  solicited clients for competing business.  For instance, RHI submits evidence that Murray contacted an

24  RHI client requesting a broad meeting, "I would like to come out and have a meeting to discuss [the

25  season]."  RHI presents evidence that Murray placed RHI candidates at RHI clients on behalf of BBSI.

26  (Doc.115, Pl's Statement of Disputed Facts #64-70, 72.)  Murray delivered business flyers and brochures

27  to RHI clients which do not limit the services which BBSI offered.  (Doc.115, Pl's Statement of

28  Disputed Facts #73, 74.)  These are all disputed facts from which a reasonable jury could conclude that

1    Murray engaged in solicitation of competing business.

2    **C.       Unfair competition and Tortious Interference**

3           Plaintiff alleges that Murray engaged in unfair competition and that both Murray and BBSI

4    tortiously interfered with its contractual relationships and prospective economic relationships by using

5    RHI's trade secrets.

6           This same evidence, discussed above, supports denial of the motion for summary judgment on

7    the claims of Unfair Competition and Tortious Interference with Business Relationships.  The California

8    Business & Professions Code §17200 et seq. ("UCL") provides a cause of action for parties injured by

9    any "unlawful, unfair or fraudulent act or practice." Cal. Bus. Prof. Code §§17200, 17203, 17204.  It

10   embraces "anything that can properly be called a business practice and that at the same time is forbidden

11   by law." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143, 63 P.3d 937, 943, 131

12   Cal.Rptr.2d 29, 37 (2003).   Section 17200 "borrows" violations from other laws by making them

13   independently actionable as unfair competitive practices.  *Id.*

14          RHI argues that the predicate act for violation of the UCL is the misappropriated trade secrets

15   in violation of the Uniform Trade Secrets Act.  RHI argues that it presented evidence that Murray and

16   BBSI misappropriated and used RHI's trade secrets in violation of the UTSA, and that BBSI tortiously

17   interfered with RHI's Employment Agreement with Murray.  RHI cites to the totality of its Statement

18   of Disputed Facts, facts 1-109, (Doc. 115) and the totality of its opposition to defendants' Statement of

19   Undisputed Facts, facts 1-150 (Doc. 113.)  While this wholesale citation to every fact presented may,

20   in the usual opposition to a motion, be inadequate to raise an issue of fact,[3] the Court notes that

21   defendants did not respond to any of the plaintiff's Disputed Facts (Doc. 155.)  Each of RHI's disputed

22   facts are in dispute.  These facts include the taking and use of confidential and trade secret information

23   by Murray and for the benefit of BBSI.  Accordingly, the Court finds that plaintiff has raised issues of

24   _____

25          [3] In addition, the Court questions whether there are any facts as to whether BBSI tortiously interfered with RHI's
     Employment Agreement with Murray.  Nonetheless, because of defendants' failure to address the disputed facts, the Court
26   considers that plaintiff has raised questions of fact as to the employment agreement with Murray.  The Court further notes
     that this case is highly factually intensive - who did what, who said what, what was done, what was taken, etc.  Indeed, the
27   very issue of what is the trade secrets is disputed.  (See Doc. 145, Defendants' Reply Brief, e.g., p. 3-5(what is a trade
     secret).)  A reasonable jury could conclude from the totality of disputed facts BBSI may have interfered with RHI's
28   employment agreement with Murray.

1    fact.

2         RHI also alleges tortious interference with contractual relations and prospective economic

3    advantage.  The elements of these two claims are similar: (1) a contract or economic relationship

4    between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional

5    acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

6    disruption of the contractual relationship; and (5) resulting damage. the same time is forbidden by law.

7    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th at 1153.

8         For the same reasons that the Court denies the motion on the claim for Unfair Competition, the

9    Court denies the motion on the claims for tortious interference with contractual relations and prospective

10   economic advantage.

11   **D.    Unenforceability of the Non-disclosure and Non-solicitation Clauses**

12        Defendants Murray and BBSI argue that partial summary judgment on the claims for breach of

13   contract, breach of the covenant of good faith and fair dealing and tortious interference with contract is

14   appropriate because these claims rely upon invalid and unenforceable non-solicitation and non-disclosure

15   provisions. Murray argues that these two provisions restrict a persons ability to compete and are

16   therefore invalid under Section 16600.

17        California Business and Professions Code § 16600 ("section 16600") provides in part that "every

18   contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any

19   kind is to that extent void."  A covenant not to solicit the former employer's customers is treated as a

20   covenant not to compete and is invalid under Bus. & Prof.C. § 16600.  *Thompson v. Impaxx, Inc.*, 113

21   Cal.App.4th at 1429.

22        **1.    Two Exceptions to Section 16600**

23        Two applicable exceptions exist to the enforceability of the covenant not to solicit former clients.

24   Covenants not to solicit are "allowable only when they protect trade secrets or confidential propriety

25   information." *Thompson v. Impaxx, Inc.*, 113 Cal.App.4th at 1429.  The "trade secret" exception to

26   Section 16600 has been recognized by the California Supreme Court.  The California Supreme Court

27   has construed section 16600 to invalidate contracts not to compete, "except where their enforcement is

28   necessary to protect the trade secrets of an employer." *Gordon Termite Control v. Terrones*, 84

1   Cal.App.3d 176, 178, 148 Cal.Rptr. 310 (1978) (citing *Muggill v. The Reuben H. Donnelly Corp.,* 62

2   Cal.2d 239, 242,42 Cal.Rptr. 107, 398 P.2d 147 (1965)).  A former employee has the right to compete

3   with his or her former employer, even for the business of those who had been customers of the former

4   employer, provided such competition is fairly and legally conducted. *Reeves v. Hanlon*, 33 Cal.4th 1140,

5   1149, 17 Cal.Rptr.3d 289, 295 (2004).[4]

6       Murray and BBSI acknowledge the exception that a covenant not to solicit is valid to protect

7   trade secrets.

8       The second exception to the rule that a covenant not to solicit is an invalid restraint on trade is

9   where the restraint on trade is "narrow in scope." *General Comm'l Packaging, Inc. v. TPS Package*

10  *Engineering, Inc.*, 126 F.3d 1131, 1134 (9th Cir. 1997).  Whether Bus. & Prof.C. § 16600, permits

11  employee noncompetition agreements, if the agreements are "narrow in scope" is presently before the

12  California Supreme Court in *Edwards v. Arthur Andersen*, LLP, Case No. S147190.

13      The Court requested that the parties submit supplemental briefing on the issue before the

14  California Supreme Court.  The parties acknowledged that a ruling in *Edwards* will impact their

15  argument under the "narrow in scope" exception.  Plaintiff argues, however, and the Court agrees, that

16  the *Edwards* decision will not be determinative of the parties' argument under the "trade secret"

17  exception.

18      Therefore, the Court will consider whether plaintiff has raised a triable issue of fact under the

19  trade secret exception.  As the Court found at length above, RHI has raised issues of fact as to whether

20  Murray took and used trade secrets.  Thus, as a general proposition, the non-solicitation and non-

21  disclosure provisions are not invalid under section 16600 because they seek to protect trade secrets and

22  confidential information.

23      **2.    Whether the Non-disclosure provision is ambiguous and overly broad**

24      Murray attacks Section 8 of the employment agreement, the non-disclosure or misuse of

25  

26      [4]In *Reeves*, two lawyers surreptitiously copied a database containing their employer's confidential client list, then
    used the list to directly solicit the clients for their new law firm. The California Supreme Court upheld the non-solicitation

27  in even an at-will employment, and affirmed a money judgment against the lawyers, holding they violated the UTSA by
    soliciting the clients rather than simply announcing their new firm.  Thus, covenants not to solicit are not invalid where they

28  seek to protect trade or confidential information.

1  confidential information, as invalid because the words used in the provisions are broad, ill-defined or

2  not defined.  Murray argues the provision is unenforceable as an unreasonable restriction on trade.  She

3  argues that the term "confidential" information is not clearly defined, and is only defined by enumerating

4  certain types of information.  According to the RHI Agreement, information which must be treated as

5  confidential include the: (I) name, address, contact persons or requirements of any customer, client,

6  applicant, candidate or employee of any of the RHI Companies; and (ii)  information with respect to

7  procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI

8  Companies.  Defendants argue the terms "requirements," "client," "procedures," "personnel," "plans,"

9  "objectives" or "strategies" are themselves without clear definition.  Defendants argue that the term

10  "RHI Companies" is overly broad as RHI has 360 offices in 19 countries.

11          Whether the non-disclosure provision is vague and over broad cannot be decided upon summary

12  judgment because it requires an interpretation of the terms of the contract Murray claims are vague or

13  overbroad.  Generally, a non-disclosure agreement, barring disclosure of confidential information, is

14  valid to protect trade secrets.  In this case, the non-disclosure of confidential information bars the use

15  of confidential information.  It does not bar competition with RHI; it bars Murray only from soliciting

16  its customers with the use of trade secret information. *Thompson v. Impaxx, Inc.*, 113 Cal.App.4th 1425

17  (2003) and *Kolani v. Gluska*, 64 Cal.App.4th 402 (1998), which Murray relies upon, did not involve the

18  use of trade secrets.

19          Whether the terms are too broad or are ill-defined cannot be determined from the four corners

20  of a contract.  A court cannot determine, based on only the four corners of a document, without

21  provisionally considering any extrinsic evidence offered by the parties, that the meaning of the document

22  is clear and unambiguous.  *Fremont Indem. Co. v. Fremont General Corp.* 148 Cal.App.4th 97, 114,

23  55 Cal.Rptr.3d 621, 63 -634 (2007).  Even if the written agreement is clear and unambiguous on its face,

24  the trial judge must receive relevant extrinsic evidence that can prove a meaning to which the language

25  of the contract is "reasonably susceptible." *Pacific Gas and Electric Co. v. G. W. Thomas Drayage Co.*,

26  69 Cal.2d 33, 37, 69 Cal.Rptr. 561 (1968).  An ambiguity arises when language is reasonably susceptible

27  of more than one application to material facts.  *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 46 Cal.

28  Rptr. 3d 668, 139 P.3d 56 (2006). Whether a written contract is ambiguous is a question of law to be

1   decided by the court. *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir.1979)

2   (applying California law), *cert. denied*,444 U.S. 866 (1979).   In assessing whether a contract is

3   ambiguous, the district court "must receive relevant extrinsic evidence that can prove a meaning to

4   which the language of the contract is 'reasonably susceptible.' ' Id.   If an ambiguity exists, the Court

5   cannot resolve the dispute on summary judgment. *National Union Fire Ins. Co. v. Argonaut Ins. Co.*,

6   701 F.2d 95, 97 (9th Cir.1983). "The rationale for this proposition is simple: ambiguity in a contract

7   raises a question of intent, which is a fact question precluding summary judgment." *Id.*

8         RHI presents evidence of the meaning of the terms to which the terms are reasonably susceptible.

9   RHI has presented evidence that the confidential information was the information contained in the Micro

10  J computer system.   RHI presents evidence that Murray testified that she understood the terms of the

11  confidentiality provision.   (Doc.115, Statement of Disputed Facts, #7-12; Murray Depositions excerpts

12  designated therein.)   Thus, there is a dispute, at a minimum, as to the intent of the parties and whether

13  the terms are reasonably susceptible to the two different interpretations.   Therefore, summary judgment

14  is denied.

15        **3.        Whether the Non-solicitation Provision in the RHI Agreement is Unenforceable**

16        Murray seeks to invalidate Section 10 of the RHI agreement.   She argues that section 10 purports

17  to bar Murray not only from solicitation but also from "performing services" for any customer of RHI

18  for one year.   Paragraph 10 would also prevent Murray from providing even those services which RHI

19  does not and cannot provide. Murray argues this portion of the provision constitutes an outright

20  prohibition on trade and is void. *Kolani v. Gluska,* 64 Cal.App.4th 402, 407 (1984).

21        Murray further argues in defining "solicit" in the way the agreement does, RHI prohibits Murray

22  from servicing those customers who, without solicitation by Murray, approach her on their own and

23  request services. Paragraph 10 extends to those customers who were previously, or are at the time of

24  Solicitation or the performance of services, a customer of any Competitor.   The term

25  "customer"embraces even those customers of OfficeTeam Modesto who were not known to Murray,

26  with whom she had no dealings and as to whom she did not acquire information during her tenure there.

27        Generally, a nonsolicitation agreement, barring the solicitation of customers of a former

28  employer, is valid if the customer information is a trade secret.   *Robert L. Cloud & Associates, Inc. v.*

17

1    *Mikesell,* 69 Cal.App.4th 1141, 1150, 82 Cal.Rptr.2d 143 (1999) ("acts of solicitation of the former

2    employer's customers and the misuse of confidential information are acts of unfair competition that may

3    be enjoined".)

4         RHI argues that Murray's employment agreement with RHI does not prohibit her from working

5    for a competitor, nor does it restrict her from working for all RHI clients for all RHI subsidiaries. (Doc.

6    115, Statement of Disputed Facts, fact 30.) RHI's non-solicitation provision only restricts Murray from

7    soliciting or performing services for customers of the Modesto office, who were customers during the

8    twelve months prior to Murray leaving, for a period of twelve months. (Doc. 115, Statement of Disputed

9    Facts, fact 31.)  These facts are indeed in dispute.  With the factual dispute as to what the scope of the

10   non solicitation provision encompasses, summary judgment is denied.

11        **4.**      **Time Limitation**

12        Murray argues Section 10 exceeds the time limitation scope mandated by Business & Professions

13   Code § 16607.[5]  Murray argues that, under Section 16607, only those customers who had job orders

14   within 180 days (six months) before Murray's departure from RHI can be considered trade secrets of

15   RHI.

16        As discussed above, an employment agency's customer list, as well as possible other confidential

17   information in the Micro J computer system, are trade secrets.   Business and Professions Code section

18   16607 only permits the restriction of customer lists acquired within the last six months (180 days) of

19   employment and only for one year after employment termination.  Bus. & Prof.C. § 16607.  The time

20   limitation does not restrict protection of trade secrets other than customer lists.  *See ReadyLink*

21   *Healthcare v. Cotton*, 126 Cal.App.4th 1006, 1020, 24 Cal.Rptr.3d 720, 730 (2005).  In *ReadyLink*,

22   defendant argued that ReadyLink could not prevail because section 16607 only permits the restriction

23   of information acquired within the last six months of employment and only for one year after

24

---

25       [5] That provision states: "(a) Except as provided in subdivision (b), the customer list, including the names, addresses and identity of all employer customers who have listed job orders with an employment agency within a period of 180 days

26   prior to the separation of an employee from the agency and including the names, addresses and identity of all applicant customers of the employment agency, shall constitute a trade secret and confidential information of, and shall belong to, the

27   employment agency. "(b) Notwithstanding the provisions of subdivision (a), no liability shall attach to, and no cause of action shall arise from, the use of a customer list of an employment agency by a former employee who enters into business as an

28   employment agency more than one year immediately following termination of his employment."

employment termination.  The Court held that section 16607 did not bar an injunction because the injunction was premised not only on misappropriation of ReadyLink customer lists, but also on misappropriation of numerous other trade secret items. Thus, Section 16607 does not impose a time limitation as to the other trade secret information.

Likewise, here, there are disputed issues as to whether other trade secrets were taken and used. Thus, on the facts currently presented, the time limitation of section 16607 is inapplicable.

## CONCLUSION

For all the foregoing reasons, the defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

**Dated:    June 25, 2008**                                        **/s/ Lawrence J. O'Neill**
                                                                               UNITED STATES DISTRICT JUDGE